UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

UNITED STATES OF AMERICA          *

            V.          *          Case No. AW 11-316

GLORIA EDWARDS
ALFRED EDWARDS, JR.          *

## DEFENDANTS' CONSOLIDATED PRE-TRIAL MOTIONS AND MEMORANDUM AND REQUEST FOR EVIDENTIARY HEARING

The Defendants, by and through their attorneys, respectfully submits these consolidated pre-trial motions and, in furtherance thereof, states as follows:

## I.     INTRODUCTION AND BACKGROUND

The Defendants, Gloria Edwards and Alfred Edwards, Jr, have been indicted in the above captioned matter in counts alleging conspiracy to harbor an alien and harboring an alien in violation of 8 U.S.C. 1324(a)(1)(A)(v)(I); receipt, possession and disposal of property obtained by fraud in violation of 18 U.S.C.2315; interstate transportation of property obtained by fraud in violation of 18 U.S.C. 2314 and making false statements in violation of 18 U.S.C. 1001.   The indictment further contains a forfeiture count.

At its essence, the indictment alleges that that the Defendants harbored, concealed and shielded from detection an alien, identified in the indictment as T.E, knowing and in reckless disregard of the fact that T.E. came to, entered and remained in the United States in violation of the law and did so for the purpose of financial gain.

## II.     INDEX AND SUMMARY OF PRE-TRIAL MOTIONS

The Defendants file this consolidated Pre-trial Motion and Memorandum and seek relief

1

from this Honorable Court via the following motions:

Paragraph No.

III.    Motion to Suppress Statements

IV.    Motion to Bar Introduction of  Statements violative of *Bruton v. United States*

V.    Motion to Compel Disclosure of T.E.'s complete A File and all information and documents pertinent to her application for protected status

VI.    Motion in Limine re Rule 404(b) Notice/Evidence

VII.    Motion to Sever Counts Three and Four of the Indictment

## Summary of Arguments

During the investigation of this matter, a search warrant was executed at the residence of the Defendants and, during the course of the execution of the search warrant, each Defendant was interrogated by law enforcement officers and gave statements that the government has indicated that it will seek to use during the trial of this matter.  The Defendants have requested that the government identify which portions of the Defendants' statements that it may seek to introduce during the trial of this matter as the government has indicated it intends to jointly try the Defendants.  *Bruton* considerations require that the government redact those portions of a defendant's statement that facially incriminate a co-defendants.  The government has yet to identify what portions of each Defendant's statements it believes it can introduce without violating the holding of *Bruton.*

The Defendants further contend that the statements given by each were involuntary and were given while each was in *de facto* custody and were obtained without the Defendants having been advise of and waiving their *Miranda* rights.

2

T.E., the alien named in the indictment has, according to information provided to the Defendants, sought protected status in the United States based upon T.E.'s allegations of mistreatment by the Defendants. The Defendants have requested and continue to seek full disclosure of all information and documents pertinent to the application for protected status sought by T.E., information that has yet to be completely provided.

Finally, the Defendants seek the severance of counts three and four and a separate trial as to those counts. Counts three and four relate to an allegation of the misappropriation of funds with respect to a retirement check allegedly intended for Alfred Edwards' deceased brother and allegedly misappropriated by the Defendants. Those allegations bear no logical relationship to the other counts of the indictment and should be severed for purposes of trial.

### III. MOTION TO SUPPRESS STATEMENTS AND REQUEST FOR EVIDENTIARY HEARING

The search warrant in this matter was executed during the morning of February 25, 2010 and concluded at approximately 2:39 p.m. During the time that law enforcement agents were present at the Edwards' residence, both Gloria Edwards and Alfred Edwards were interrogated by law enforcement agents. Neither was advised of, nor waived their *Miranda* rights. While neither was formally arrested, each was in *de facto* custody under circumstances where, prior to any interrogation, each should have been advised of their *Miranda* rights and those rights waived prior to any interrogation. The totality of the circumstances present at the Edwards residence during the time of their interrogations caused any statements given to be both constitutionally involuntary and in violation of the dictates of *Miranda v. Arizona*, 384 U.S. 486 (1966). The government bears the burden of establishing otherwise and the Defendants respectfully request that the government be required to establish same at an evidentiary hearing.

3

The Supreme Court in *Florida v. Royer*, 103 S.Ct. 1319 (1983) provided a concise digest of the law applicable where an individual is detained beyond an initial accosting and is held "for investigation" and rejects the notion that police may detain an individual "for investigation" for the a period of time like for which the Defendant was detained based merely upon suspicion of criminal activity.  Police must either arrest or release.  From *Royer* we learn that:

> First, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *See Dunaway v. New York,* 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979); *Terry v. Ohio,* 392 U.S. 1, 31, 32–33, 88 S.Ct. 1868, 1885–1886, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); *id.,* at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. *Terry v. Ohio, supra,* 392 U.S., at 32–33, 88 S.Ct., at 1885–1886 (Harlan, J., concurring); *id.,* at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. *United States v. Mendenhall, supra,* 446 U.S., at 556, 100 S.Ct., at 1878 (opinion of Stewart, J.). If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.
>
> Third, it is also clear that not all seizures of the person must be justified by probable cause to arrest for a crime. Prior to *Terry v. Ohio, supra,* any restraint on the person amounting to a seizure for the purposes of the Fourth Amendment was invalid unless justified by probable cause. *Dunaway v. New York,* 442 U.S. 200, 207–209, 99 S.Ct. 2248, 2253–2254, 60 L.Ed.2d 824 (1979). *Terry* created a limited exception to this general rule: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime. In that case, a stop and a frisk for weapons were found unexceptionable. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), applied the same approach in the context of an informant's report that an unnamed individual in a nearby vehicle was carrying narcotics and a gun. Although

not expressly authorized in *Terry, United States v. Brignoni-Ponce,* 422 U.S. 873, 881–882, 95 S.Ct. 2574, 2580–2581, 45 L.Ed.2d 607 (1975), was unequivocal in saying that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop. In *Brignoni-Ponce,* that purpose was to verify or dispel the suspicion that the immigration laws were being violated, a governmental interest that was sufficient to warrant temporary detention for limited questioning. Royer does not suggest, nor do we, that a similar rationale would not warrant temporary detention for questioning on less than probable cause where the public interest involved is the suppression of illegal transactions in drugs or of any other serious crime.

*Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), involved another circumstance in which a temporary detention on less than probable cause satisfied the ultimate test of reasonableness under the Fourth Amendment. There the occupant of a house was detained while a search warrant for the house was being executed. We held that the warrant made the occupant sufficiently suspect to justify his temporary seizure. The "limited intrusion on the personal security" of the person detained was justified "by such substantial law enforcement interests" that the seizure could be made on articulable suspicion not amounting to probable cause. *Id.,* at 699, 101 S.Ct., at 2592.

Fourth, *Terry* and its progeny nevertheless created only limited exceptions to the general rule that seizures of the person require probable cause to arrest. Detentions may be "investigative" yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest. *Dunaway v. New York, supra,* made this clear. There, the suspect was taken to the police station from his home and, without being formally arrested, interrogated for an hour. The resulting incriminating statements were held inadmissible: reasonable suspicion of crime is insufficient to justify custodial interrogation even though the interrogation is investigative. *Id.,* 442 U.S., at 211–212, 99 S.Ct., at 2255–2256. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), are to the same effect.

The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described "place to be searched, and the persons or things to be seized," U.S. Const., Amend. IV, even if the search is made pursuant to a warrant and based upon probable cause. The Amendment's protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a warrantless search: the search must be limited in scope to that which is justified by the particular purposes served by the exception. For example, a warrantless search is permissible

5

incident to a lawful arrest because of legitimate concerns for the safety of the officer and to prevent the destruction of evidence by the arrestee. *E.g., Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Nevertheless, such a search is limited to the person of the arrestee and the area immediately within his control. *Id.,* at 762, 89 S.Ct., at 2039. *Terry v. Ohio, supra,* also embodies this principle: "The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." 392 U.S., at 19, 88 S.Ct., at 1878, quoting *Warden v. Hayden,* 387 U.S. 294, 310, 87 S.Ct. 1642, 1651, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring). The reasonableness requirement of the Fourth Amendment requires no less when the police action is a seizure permitted on less than probable cause because of legitimate law enforcement interests. The scope of the detention must be carefully tailored to its underlying justification.

The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. See,*e.g., United States v. Brignoni-Ponce,* 422 U.S., at 881–882, 95 S.Ct., at 2580–2581; *Adams v. Williams,* 407 U.S., at 146, 92 S.Ct., at 1923. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

Fifth, *Dunaway* and *Brown* hold that statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will. *Dunaway v. New York,* 442 U.S., at 218–219, 99 S.Ct., at 2259–2260; *Brown v. Illinois, supra,* at 601–602, 95 S.Ct., at 2260–2261. In this respect those cases reiterated one of the principal holdings of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Sixth, if the events in this case amounted to no more than a permissible police encounter in a public place or a justifiable *Terry*-type detention, Royer's consent, if voluntary, would have been effective to legalize the search of his two suitcases. Cf. *United States v. Watson,* 423 U.S. 411, 424–425, 96 S.Ct. 820, 828–829, 46 L.Ed.2d 598 (1976). The Florida Court of Appeal in the case before us, however, concluded not only that Royer had been seized when he gave his consent to search his luggage but also that the bounds of an investigative stop had been exceeded. In its view the "confinement" in this case went beyond the limited restraint of a *Terry* investigative stop, and Royer's consent was thus tainted by the illegality, a

6

conclusion that required reversal in the absence of probable cause to arrest. The question before us is whether the record warrants that conclusion. We think that it does.

At 1324.  (Emphasis added)

In *Dunaway v. New York*, the suspect was taken to the police station where he was detained and placed in an interview room where he was held for an hour.  There the Supreme Court made clear that the detention was unlawful and that any statement taken during the period of the unlawful detention had to be suppressed as a produce and fruit of an unlawful detention.  99 S.Ct at 2257, 2260.   *Dunaway* specifically rejects a holding of the lower court that would have permitted a brief detention for interrogation based upon reasonable suspicion, where there was no formal accusation filed against defendant and where  public interest existed in solving a crime.  99 S.Ct. at 2256.   *See also  Davis v. Mississippi*, 89 S.Ct. 1394 (1969) (fingerprints taken during an unlawful detention must be suppressed.); *In Re Appeal 245(75)*, 29 Md.App. 131, 146 (1975) (statement and evidence acquired during period of an unlawful detention must be suppressed as fruit of the unlawful detention).

Here the Edwards were effectively in custody and the circumstances surrounding their interrogations caused their statements to be both involuntary and in violation of *Miranda* and, therefore, such statements should be suppressed.

## IV. MOTION IN LIMINE TO BAR BRUTON VIOLATIVE STATEMENTS

As previously noted in this pleading, the government contends that the Defendants made statements to law enforcement officers at the time that the search warrant was executed at their residence on February 25, 2010.  A copy of the memoranda of those

interviews is attached hereto as Exhibit #1.

The Defendants have made informal demands of the government  asking the government to indicate what the government's intentions are with respect to the introduction of the statements made by the Defendants to law enforcement agents at the time of the execution of the search warrant in this matter and whether it also intends to seek to try the Defendants jointly.   The government advised that it intends to jointly try the Defendants and it also intends to use the statements made by the Defendants.  Upon being advised of the government's position, the Defendants then asked that the government advise how it proposed to redact the Defendants' statements to overcome any *Bruton* issues and specifically asked that it identify those portions of the Defendants' statements that it believes it can introduce without violating the holding of *Bruton v. United States,* 391 U.S. 123, 135-36 (1968) which held that the confrontation clause of the Sixth Amendment is violated when a non-testifying co-defendant's confession naming the defendant as a participant in the crime is admitted into evidence.   This is so, even if the defendant's name is redacted, if it is clear that the defendant is being implicated.  *United States v. Akinkoye*, 185 F.3rd 192, 197 (4th Cir. 1999), *cert. denied*, 528 U.S. 1177 (2000), *citing Gray v. Maryland*, 523 U.S. 185, 195 (1998).

Inasmuch as the government appears intent on trying the Defendants jointly, the Defendants are respectfully requesting that this Honorable Court grant the Defendants' motion in limine to bar the introduction of either of their statements until such time as the government has prepared a redacted statement that does not violate the dictates of *Bruton* and *Gray*.  Furthermore, should the government indicate that it intends to offer a redacted

statement, the Defendants request that the Court set a prompt deadline for the government to submit its proposed redacted statement so that there is sufficient time for the Defendants file appropriate additional motions, should the Defendants believe that the proposed redacted statements do not comply with the requirements of *Bruton* and *Gray*.

### V.  MOTION IN LIMINE RE RULE 404(b) EVIDENCE

The government, by notice in a February 6, 2012 letter to the Defendants, indicated it may seek to introduce certain evidence that may be considered Rule 404(b) evidence.  See attached Exhibit #2.

Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as poof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Fourth Circuit acknowledges that the Court's own jurisprudence has evolved concerning the application of Rule 404(b) in cases involving allegations of prior drug transactions.  *See United States v. Johnson*, 617 F.3d 286, 296 (4th Cir. 2010).  The Fourth Circuit has held that Rule 404(b) prior bad acts are admissible when: (1) the evidence is relevant to an element of the offense and not offered to establish general character; (2) the evidence must be necessary; (3) the evidence must be reliable; and (4) the probative value must not be substantially outweighed by risks of confusion or unfair prejudice.  *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).

As in *Johnson*, here the Government's 404(b) evidence is not sufficiently related to the charged counts that it could be considered probative of intent or knowledge or

necessary to prove any element of the offenses.  *See Johnson*, 617 F.3d at 297;

*Hernandez*, 975 F.2d at 1039 (proposed ancillary drug evidence was "tenuous and

remote" from the charged crimes).  Moreover, the government's proposed 404(b)

evidence is inadmissible due to being highly prejudicial.  *See United States v. Madden*,

38 F.3d 747, 753 (4th Cir. 1994).

For the foregoing reasons it is respectfully requested that the Defendants' motion in

limine be granted and the government be barred from seeking to introduce, at the trial of

this matter, the matters referred in the government February 6, 2012 letter to the

Defendants.

## VI.  MOTION TO COMPEL DISCOVERY OF BRADY MATERIALS OR, IN THE ALTERNATIVE, BAR THE TESTIMONY OF T.E.

The Defendants have been advised that T.E., the alleged alien victim in the

indictment in this matter, has made an application to remain in the United States, despite

what the government contends was her unlawful status in the United States during the time

frame of the allegations contained in the indictment.  This application is based upon her

allegation that she was victimized by the Defendants.  Despite repeated requests over a

period of months to disclose and provide all information regarding T.E.'s efforts to change

her status, this critical evidence has not yet been provided to the Defendants.  Not only do

the Defendants need this information to properly cross-exam T.E. on the issues of bias and

motive, but the information must be provided in a timely manner so that the Defendants

can fully investigate the manner in which her application for an adjustment of status has

been handled.   Her applications, statements she made in support of her application,

promises that may have been made to her and the need for her to make allegations against the Defendants as part of the required proof for her obtaining an adjustment of status based on an allegations that she was, in effect, an enslavement victim, are all central to the evaluation of her credibility.   She is the government's case.   Her credibility is the key factor in this case.

The government has advised that it has made requests of other branches of the government for the requested information.   Inexplicably that information has not been forthcoming.   Late disclosure will not afford the Defendants an opportunity to properly prepare to defend this matter.

Shortly before the filing of this motion, the government advised that the A File of T.E. had been located and was en route to the government.   If the file arrives in a timely manner, then this motion may be moot.   As of the deadline for filing motions, however, said file has not been produced and it is for that reason that this motion must filed at this time.

The Defendants are respectfully requesting that this Honorable Court issue an immediate order compelling the production of the request *Brady* material.   The government, as an entity, has an affirmative obligation to promptly provide *Brady* material and, while the prosecutors may have made requests for this information, the fact that other branches of government have not produced the information, does not insulate the government as the prosecuting agency from its responsibility to produce the required information.   Just as the prosecutor is held accountable for the failure of a law enforcement agency to produce required discovery materials, likewise the government is held accountable when another branch of the same government does not provide information

essential to a fair trial in this matter.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963) the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution.  A *Brady* violation occurs where evidence is not disclosed that is favorable to the defendant, material and the prosecution had the materials and failed to disclose them.  *Moore v. Illinois*, 408 U.S. 786, 794-5 (1972)  Whether *Brady* or *Giglio* information (see *Giglio v. United States*, 405 U.S. 150, (1972) which requires the government to disclose impeachment information), the specific information requested by the Defendants is constitutionally required to be provided in a timely manner.

The Defendants are, at this time, requesting that the Court set a firm and prompt deadline for the disclosure the requested information making clear that the sanction for failure to disclose the requested information will be the barring of any trial testimony by T.E.

## VI.  MOTION TO SEVER COUNTS THREE AND FOUR OF THE INDICTMENT

In counts one, two and five of the indictment in this matter, the Defendants are charged with offenses related to their relationship and conduct involving T.E.  The allegations pertain to harboring T.E. with knowledge of her unlawful status and to seeking a financial gain by having her perform household duties and chores without providing proper and adequate compensation to her for that alleged work.

In counts three and four the Defendants are charged with unlawfully receiving and converting monies intended for Alfred Edwards, Jr.'s deceased brother paid by the Connecticut State Municipal Employees Retirement System ("MERS").

The conduct charged in counts three and four is distinct and different from the conduct charged in the other counts of the indictment.  The evidence necessary to prove counts one, two and five and the evidence necessary to prove counts three and four is separate and distinct.  In the trial and prove with respect to counts three and four, the government would not be permitted in introduce allegations of alleged misconduct involving T.E., conduct that the indictment alleges spans a time period of May 1999 and September 2009.  Counts three and four allege conduct occurring over three days, September 1, 2008 through September 3, 2008 and involving a single check.    In determining the guilt or innocence of the Defendants on counts three and four, the evidence pertaining to the allegations of harboring and mistreating T.E. would prevent the Defendants from receiving a fair and impartial trial with respect counts three and four.

Fed. R. Crim. P. 8(a) permits joinder of separate offenses where the offenses charged are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute part of a common scheme or plan.  Fed. R. Crim. P  14(a) permits the Court to order a separate trial of counts where a joint trial of counts would prejudice a a defendant.

There are three sources of prejudice that may justify the granting of a severance under Rule14; (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may conclude

the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.   *United States v. Foutz,* 540 F.2d 733, 736 (4th Cir.1976).

Applying this standard in the instant matter, it is clear that the joint trial of these matters presents all three of the potential sources of prejudice identified in *Foutz*.   The nature of the allegations in the counts are unrelated and defenses may be different as to the two differing types of counts and the Defendants' decisions as to whether or not to testify and defend are potentially different as well.

Granting a severance of counts will not prejudice the government.  The allegations in counts three and four are limited, distinct and relate to a single check.  A trial of this matter would be, at most, a two-day trial.

In balancing the equities and in seeking ensure a fair trial on each separate series of allegations, the only way to ensure that the Defendants are not unfairly prejudiced is to grant a separate trial as to counts three and four.

**VIII. SUMMARY AND CONCLUSION**

For each and all of the reasons set forth in the Defendants' Pre-Trial Motions it is respectfully requested that this Honorable Court grant the relief prayed.

Respectfully submitted,


/S/
_____
ROBERT C. BONSIB
Attorney for Gloria Edwards
MARCUSBONSIB, LLC
6411 Ivy Lane, Suite 116
Greenbelt, Maryland  20770
(301) 441-3000
 Bar No. 00324

14

/S/

_____
ANDREW D. ALPERT
Attorney for Alfred Edwards, Jr.
16901 Melford Blvd, Suite 325
Bowie, MD 20715
(301) 262-7005
Bar No. 23533

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing  motion was sent via ECF, this

27th day of April, 2012 to Assistant United States Attorney Jonathan Lenzner, Office of

the United States Attorney for the District of Maryland, 6500 Cherrywood Lane,

Greenbelt, MD 20770 and to Department of Justice Attorney Cindy Chung, Civil Rights

Division, Department of Justice, 601 D. Street, N.W., Washington, D.C.  20004

/S/

_____
ROBERT C. BONSIB